# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

JAMES CALHOUN-EL, #160083　　　＊
Plaintiff　　　　　　　　　　　　　＊
　　　　　　　　　　　　　　　　　＊
v　　　　　　　　　　　　　　　　＊　Civil Action Case No. RDB-10-765
　　　　　　　　　　　　　　　　　＊
GARY MAYNARD　　　　　　　　＊
CORRECTIONAL MEDICAL SERVICES,　＊
　INC.,　　　　　　　　　　　　　＊
NURSE ADAMS　　　　　　　　　＊
Defendants　　　　　　　　　　　＊

## MEMORANDUM OPINION

The pro se Plaintiff James Calhoun-El ("Calhoun-El") has filed his Complaint seeking punitive and compensatory damages pursuant to 42 U.S.C. §1983. ECF No. 4.[1] Defendant Gary Maynard, Secretary of Public Safety and Correctional Services for the State of Maryland by his counsel, moves to dismiss or, in the alternative for summary judgment (ECF No. 9) and Defendants Correctional Medical Services, Inc. ("CMS") and Timberlie Adams R.N. ("Nurse Adams") (collectively, the "Medical Defendants"), by their by their counsel move to dismiss or, in the alternative for summary judgment. ECF No. 13. Calhoun-El has filed a reply to the dispositive motions. ECF No. 23. After review of the pleadings, exhibits, and applicable law, the Court determines that a hearing is unwarranted. Local Rule 105.6 (D. Md. 2010). For the reasons that follow, Defendant Maynard and the Medical Defendants' motions for summary judgment (ECF No. 9 and 13) will be GRANTED and judgment will be ENTERED in their favor.

## BACKGROUND

### A. Plaintiff's Claims

Calhoun-El is an inmate at the North Branch Correctional Institution (NBCI). He

---

[1] Calhoun-El's Motion for a Preliminary Injunction was dismissed on April 6, 2010. ECF No. 2.

complains that on February 26, 2010, he was placed on "feed-in"[2] status by Dr. Ottey for diverticulitis of the colon and the chronic back pain that he suffers when he sits on a hard surface. Complaint, p. 4. On March 1, 2010, Nurse Adams "wrote a medical assignment denying [him] gym/yard, no work, and no inside recreation." *Id.* Calhoun-El asserts that NBCI policy denies telephone privileges, access to the library, attendance at religious services, and outside recreation to inmates on feed-in status. Complaint, p. 5.

Calhoun-El filed a sick call slip complaining that he needed exercise because he suffers from Type II diabetes. On March 9, 2010, Dr. Majd Arnaout, M.D. wrote an order to allow him to exercise for one year. *See id.* On March 11, 2010, Nurse Adams removed him from feed-in status. Calhoun-El claims her action constituted deliberate indifference to his medical needs and violated his rights under the Eighth Amendment. *See id.*

Calhoun-El has filed an affidavit in which he alleges that from March 1-6, 2010, he was told by unidentified "numerous correctional officers"[3] that he could not shower, use the law library, attend religious services, receive mail or make telephone call because of his feed-in status. He claims also that he was denied ice for his medical condition.[4]

In his Reply (ECF No. 23, pp. 3-4, Exhibit 5), Calhoun-El states that on April 8, 2011, NBCI issued a Memorandum to inmates announcing a new "policy" for feed-in status. Calhoun-El contends the new "policy" is used as a punishment against inmates with medical needs that

---

[2] Feed-in status allows inmates to eat meals in their cells. ECF No. 13, Medical Defendants' Memorandum, p. 8. n. 5.

[3] In his reply, Calhoun-El provides the names of the corrections officers. ECF No. 23, p. 7.

[4] To the extent Calhoun-El attempts to introduce new claims in his Reply (ECF No. 23) for improper confiscation of his back brace and medically prescribed cushion or for failure to provide diabetic shoes, he must do so in a separate complaint.

require them to be placed on feed-in status.[5] *See id.* According to Calhoun-El, if an inmate is housed in a single cell when placed on feed-in status, he will be moved to another housing unit and placed into a cell with another inmate designed to hold a single prisoner and lose his institutional job. *See id.* Calhoun asserts that moving an inmate to another housing unit or into a double cell constitutes retaliation due to medical condition.[6] ECF No. 23, pp. 3-4.

## B. Defendants' Dispositive Pleadings

### 1. Secretary Maynard

Counsel notes that the only time Secretary Maynard is referenced in the Complaint is the caption; Secretary Maynard is not mentioned elsewhere in the Complaint. Counsel has submitted verified records to show that neither the Division of Correction nor NBCI has a policy which denies inmates on feed-in status showers, access to the library or religious services, mail, telephone calls, or ice. ECF No. 9, Exhibit C, Declaration of Richard Graham.

---

[5] The Memorandum from Richard J. Graham, Assistant Warden reads:

> Beginning on April 13, 2011 when a medical provider places an inmate on a medical feed-in status, the inmate will be transferred to Housing Unit 2 D wing. It will be the responsibility of the medical department to notify NBCI Traffic Office of this status change. The NBCI Traffic Office will immediately notify the dietary department and make the arrangements for the move. The inmate will remain in HU 2 until the order expires and there is a vacancy in Housing Unit 3 or 4.

ECF No. 23, Plaintiff's Exhibit 5.

The Memorandum, by its own terms, takes effect on April 13, 2011, and thus was issued after the events under consideration in this case. Furthermore, the Memorandum does not address job assignments. Although the Memorandum addresses cell location for feed-in status, there is no reference to double or single celling. Calhoun-El neither alleges that Housing Unit 3 and 4 are comprised solely of single-celled inmates, nor that Housing Unit 2, D wing is comprised solely of double cell placements. It bears noting that inmates do not have federally protected rights to placement in a single cell or particular institutional job assignments. *See Rhodes v. Chapman*, 452 U.S. 337, 350 (1981); *Bell v. Wolfish*, 441 U.S. 520, 541-44, (1979); *Olim v. Wakinekona*, 461 U.S. 238, 244-48 (1983). Work assignments of prisoners ... are matters of prison administration, within the discretion of the prison administrators...." *Altizer v. Paderick*, 569 F.2d 812, 813 (4th Cir. 1978).

[6] To the extent Calhoun-El wants to raise a retaliation claim in his Reply for the first time, he may not do so. He must raise new claims in a separate complaint.

3

## 2. Medical Defendants

The Medical Defendants have filed verified copies of Calhoun-El's medical records demonstrating that on February 26, 2010, Colin Ottey, M.D. examined Calhoun-El for chronic low back pain and assigned him to feed-in status for one month during which time he would avoid recreation activities. ECF No. 13, Exhibit A, Declaration of Colin Ottey, M.D.; Exhibit B, pp. 1-5. On March 1, 2010, Nurse Adams transcribed the order for feed-in status on a Medical Assignment form. *See id.*

On March 9, 2010, Majd Arnaout, M.D. examined Calhoun-El for dermatitis. During the appointment, Calhoun-El complained about lack of exercise. Dr. Arnaout recommended that Calhoun-El exercise regularly for one year. ECF No. 13, Exhibit B, pp. 6-8.

On March 11, 2011, Nurse Adams informed Dr. Arnaout of the inconsistency between feed-in status and the exercise recommendation. In light of Calhoun-El's request for exercise, his feed-in status was cancelled. Nurse Adams wrote on Calhoun-El's medical chart:

> Spoke with Dr. Aranout concerning inconsistencies in IM's [inmate's] order for feed-in verus recreation. Latest order for "recreation" x 1 year clarified. IM requested to have recreation privileges reinstated. Per Dr. Aranout, "feed-in" status cancelled due to IM's request for exercise. New paperwork sent to dietary to cancel feed-in.

ECF No. No. 13, Exhibit p. 9.

## STANDARD OF REVIEW

Under Fed.R.Civ.P. 56(a), summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." This does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported

4

motion for summary judgment; the requirement is that there be no genuine issue of material fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed.R.Civ.P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Medical Center, Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir.1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

## ANALYSIS

### A. Claims Against Secretary Maynard

#### 1. Respondeat Superior

As previously noted, Calhoun-El points to no action or inaction on the part of Secretary Maynard that resulted in the constitutional injury alleged. To the extent Calhoun-El premises liability on respondeat superior, the doctrine does not apply in § 1983 proceedings. *See Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Liability of supervisory officials must be "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative

5

factor in the constitutional injuries they inflict on those committed to their care.' " *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001), citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir.1984). Supervisory liability under § 1983 must be supported with evidence that 1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff, 2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and 3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Calhoun-El's claims that NBCI policy [7] prevented him from recreation and other activities while in feed-in is directly refuted by verified exhibit. ECF No. 9, Exhibit C, ¶ 5. Absent personal involvement by Secretary Maynard or unconstitutional policy or custom, there is no legal basis to find Secretary Maynard liable, *see Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994), and Secretary Maynard is entitled to judgment in his favor.

### 2. Conditions of Confinement

The Eighth Amendment protects prisoners from cruel and unusual living conditions. *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). In order to state a constitutional claim premised on prison conditions, a plaintiff must allege facts demonstrating that the challenged conditions resulted in a deprivation of a basic human need that was objectively "sufficiently serious" and (2) that, subjectively, the defendant prison officials acted with a sufficiently "culpable state of mind" with regard to the conditions. *See Wilson v. Seiter*, 501 U.S. 294, 298

---

[7] As noted earlier, the "policy" about which Calhoun-El complains was instituted after the incidents at issue here took place and does not support his allegations. *See supra* note 3.

(1991). To satisfy the objective element of a conditions claim, the plaintiff must show that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions. *See Strickler v. Waters*, 989 F.2d 1375, 1380-1381 (4th Cir.1993).

Assuming the facts alleged by Calhoun-El as true, he spent a total of seven days, from March 1-6, 2010, on feed-in status with restrictions on exercise, library, religious, and telephone visits. Isolation, inactivity, discomfort and inconvenience do not in and of themselves violate the Constitution. *See In Re Long Term Administrative Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 471-72 (4th Cir. 1999) (indefinite administrative segregation). The time Calhoun-el allegedly suffered deprivation was brief, and no facts are alleged to show deliberate indifference.[8] In sum, Calhoun-El's claims do not suggest a violation of constitutional magnitude.

## B. Medical Defendants

In order to state a constitutional claim for denial of medical care, a plaintiff must demonstrate that a defendant's acts (or failures to act) amounted to deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The medical treatment provided must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *See Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted). A defendant must know of and disregard an excessive risk to inmate health or safety. "[T]he [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference."

---

[8] Nonmedical prison officials "can generally rely on his medical staff's examinations and diagnoses" in determining what level of treatment is warranted. *Iko v. Shreve*, 535 F.3d 225, 242 (4th Cir. 2008) (citing *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *Miltier v. Beorn*, 896 F.2d 848, 854-55 (4th Cir. 1990).

7

*Farmer v. Brennan*, 511 U. S. 825, 837 (1994). Thus, a health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms. *See Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998). Mere negligence or malpractice does not rise to a constitutional level. *See Miltier v. Born*, 896 F.2d 848 (1990).

### 1. CMS

CMS argues that as a corporate entity it cannot be held liable under § 1983. To the extent the Complaint names CMS solely upon vicarious liability, it is well settled that a claimant may not recover against a municipality on a respondeat superior theory under 42 U.S.C. § 1983. *See Monell v. Department of Social Services*, 436 U.S. 658, 690–95(1978). Principles of municipal liability under § 1983 apply equally to a private corporation. Therefore, a private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of respondeat superior. *See Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727–28 (4th Cir.1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir.1982). For this reason, CMS is entitled to dismissal

### 2. Nurse Adams

Calhoun-El claims that his health was adversely affected when Nurse Adams cancelled his feed-in status. Calhoun-El's medical records show that after removal from feed-status, medical practitioners continued to address his medical concerns. [9] ECF No. 13, ¶¶ 7-8; Exhibit B, pp. 15-16. Calhoun-El provides no facts to support a claim of deliberate indifference to his serious medical needs. Indeed, when Calhoun-El brought his need to exercise to the attention of

---

[9] Calhoun-El claimed in his Motion for a Preliminary Injunction that as a result of being denied an opportunity" to exercise, shower, law library and telephone calls, " he suffered and continues to suffer serious physical and mental injuries. He asserts that has not received medical treatment for high glucose, severe back spasms, headaches, constipation lethargy, and depression. ECF No. 1, p. 5. If Calhoun-El believes he is being deprived constitutionally adequate care for these conditions, he may file a separate civil rights complaint.

medical providers, his concerns were promptly considered and his assignment to feed-in cancelled in response.

## CONCLUSION

Viewing the facts and all reasonable inferences in the light most favorable to Calhoun-El, the Court finds that no genuine issue as to any material fact is presented. Secretary Maynard and the Medical Defendants are entitled to a judgment as a matter of law and judgment will be entered in their favor. A separate Order follows.

MAY 31, 2011
Date

RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE